IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



| | | |
|---|---|---|
| BOLINGBROOK HOTEL CORPORATION, INC., Plaintiff, | ) ) ) ) | |
| v. | ) ) | 00 C 5150 |
| LINDSAY, POPE, BRAYFIELD & ASSOCIATES, INC., f/k/a LINDSAY, PONDER, BRAYFIELD & ASSOCIATES, INC., Defendant. | ) ) ) ) ) | |

## MEMORANDUM AND ORDER

Plaintiff Bolingbrook Hotel Corporation ("Bolingbrook") owns and operates the Holiday Inn & Suites in Bolingbrook, Illinois. In this diversity action, Bolingbrook alleges that defendant Lindsay, Pope, Brayfield & Associates, Inc. ("Lindsay Pope"), an architectural firm, breached its contract with Bolingbrook and was professionally negligent in connection with its design and engineering of the Holiday Inn by failing to provide an adequate water pressure system. The parties' cross-motions for summary judgment, which are both based on a limitation of liability clause in the parties' contract, are before the court. For the following reasons, the limitation of liability clause does not cover Bolingbrook's breach of contract and negligent design claims so Bolingbrook's motion for summary judgment is granted and Lindsay Pope's motion for summary judgment is denied.

I.   **Background**

The following facts are undisputed unless otherwise noted. In August of 1995, Bolingbrook entered into a contract with Lindsay Pope. The terms of the contract obligated Lindsay Pope to design and oversee the construction of Bolingbrook's Holiday Inn & Suites

hotel. The contract incorporated the piping and plumbing design from Entropy Engineering. It also required Bolingbrook to provide full information regarding requirements for the project and existing utilities. Contract at ¶ 2.1 & 2.3.

The contract required Lindsay Pope to prepare preliminary building plans and construction documents consisting of "drawings and specifications setting forth in detail the requirements for construction of the project." Contract at ¶ 1.3.1. In addition, it stated that Lindsay Pope warranted that it would use the "degree of care and skill ordinarily exercised under similar conditions by reputable members of its profession practicing in the same or similar locality." Contract at ¶ 10.1. The contract, however, expressly noted that Lindsay Pope made no additional warranties, either express or implied. *Id.*

It also contained a limitation of liability provision which provided that:

> In any project there will be ambiguities, inconsistencies, errors, and omissions in the Construction Documents. These conditions may result in changes to the Contract Work, Amount, and Time. To the extent of a Contingency Reserve of 5% of the Construction Cost, the Owner agrees to indemnify and hold the Architect harmless with respect to all claims, awards, or legal actions arising out of any suit concerning the aforementioned changes.

Contract at ¶ 10.2.

As noted above, the "construction documents" referred to in the limitation of liability provision are the "drawings and specifications" prepared by Lindsay Pope. Contract at ¶ 1.3.1. The contract required Lindsay Pope to provide written interpretations of the requirements of the construction documents and provided that Lindsay Pope was not liable for these written interpretations if they were "rendered in good faith." Contract at ¶ 1.5.4. Finally, the contract

stated that any disputes arising under the agreement would be governed by Georgia law. Contract at ¶ 11.1.

According to Bolingbrook, after construction was complete and the hotel opened, the plumbing failed to deliver pressure to the upper floors or provide adequate hot water throughout the building. Bolingbrook also asserts that Lindsay Pope's plumbing design caused other problems because it was improperly vented, which led to excessive condensation and mineral deposit build-ups. Bolingbrook tried to fix the plumbing to no avail. Hotel customers repeatedly complained about problems with the plumbing and did not return to the Bolingbrook Holiday Inn for additional visits due to their dissatisfaction with the water situation. In addition, Bolingbrook lost additional business after corporate customers removed the Bolingbrook Holiday Inn from their list of approved hotels due to complaints about water problems.

Bolingbrook complained to Lindsay Pope and, dissatisfied with Lindsay Pope's response to the situation, a Bolingbrook executive wrote a letter to Lindsay Pope stating, "[r]egardless of what your contract stated, you have an obligation to your client." Bolingbrook eventually retained an independent engineering consultant who opined that the plumbing system was grossly undersized and inadequate. Eventually, Bolingbrook installed a new system and sued Lindsay Pope.

In Count I, Bolingbrook claims that Lindsay Pope breached the contract by designing defective water heating and plumbing systems. In Count II, it contends that Lindsay Pope negligently designed and engineered the water heating and plumbing system and failed to design and engineer a water pressure system. According to Bolingbrook, these acts and omissions caused it to incur over $150,000 in repair costs and to lose revenue because of the delay due to

the plumbing situation. In its motion for summary judgment, Bolingbrook argues that the limitation of liability clause referred to routine errors or omissions or "typos," not design flaws. It also contends that as the project's architect, Lindsay Pope is ultimately responsible for the plumbing at the Holiday Inn.

On the other hand, Lindsay Pope asserts that Bolingbrook agreed to omit certain "value added" items such as a water softener, power venting system, and booster pump. It also contends that Bolingbrook agreed to the limitation of liability clause to save money as it would have cost more to omit the clause and that Bolingbrook knew full well that it was limiting its ability to sue Lindsay Pope if things went south.

## II. Discussion

### A. Standard for A Motion For Summary Judgment

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party opposing the summary judgment motion "may not rest upon the mere allegations or denials of the adverse party's pleading"; rather, it must respond with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court should grant a motion for summary judgment only when the record shows that a reasonable jury could not find for the nonmoving party. *Id.*

## B. Breach of Contract

Bolingbrook asserts that Lindsay Pope breached the contract by designing subpar water heating and plumbing systems. In response, Lindsay Pope points to the limitation of liability clause in ¶ 10.2. As noted above, the clause stated that:

> In any project there will be ambiguities, inconsistencies, errors, and omissions in the Construction Documents. These conditions may result in changes to the Contract Work, Amount, and Time. To the extent of a Contingency Reserve of 5% of the Construction Cost, the Owner agrees to indemnify and hold the Architect harmless with respect to all claims, awards, or legal actions arising out of any suit concerning the aforementioned changes.

According to Lindsay Pope, this provision limits the amount that Bolingbrook can recover based on Lindsay Pope's allegedly faulty design. Specifically, Lindsay Pope contends that under the limitation of liability clause, it cannot be liable for more than 5% of the construction costs because Bolingbrook agreed to indemnify it for amounts over 5%. Bolingbrook, on the other hand, asserts that ¶ 10.2 only limits Lindsay Pope's liability for typographical errors or other picayune mistakes in the construction documents. Based on this understanding of the clause, Bolingbrook asserts that design flaws are not the kind of run of the mill errors contemplated by the parties when they agreed to this paragraph.

Lindsay Pope previously raised this argument in a motion to dismiss where it contended that Bolingbrook's complaint failed to meet the amount in controversy requirement for diversity cases. The court denied the motion to dismiss, explaining that there were two possible ways to read the limitation of liability clause. First, the court noted that the clause's plain language suggested that it applied to routine errors or omissions in the construction documents, as opposed to design flaws. Second, the court observed that the best that Bolingbrook could hope for was a

## B. Breach of Contract

Bolingbrook asserts that Lindsay Pope breached the contract by designing subpar water heating and plumbing systems. In response, Lindsay Pope points to the limitation of liability clause in ¶ 10.2. As noted above, the clause stated that:

> In any project there will be ambiguities, inconsistencies, errors, and omissions in the Construction Documents. These conditions may result in changes to the Contract Work, Amount, and Time. To the extent of a Contingency Reserve of 5% of the Construction Cost, the Owner agrees to indemnify and hold the Architect harmless with respect to all claims, awards, or legal actions arising out of any suit concerning the aforementioned changes.

According to Lindsay Pope, this provision limits the amount that Bolingbrook can recover based on Lindsay Pope's allegedly faulty design. Specifically, Lindsay Pope contends that under the limitation of liability clause, it cannot be liable for more than 5% of the construction costs because Bolingbrook agreed to indemnify it for amounts over 5%. Bolingbrook, on the other hand, asserts that ¶ 10.2 only limits Lindsay Pope's liability for typographical errors or other picayune mistakes in the construction documents. Based on this understanding of the clause, Bolingbrook asserts that design flaws are not the kind of run of the mill errors contemplated by the parties when they agreed to this paragraph.

Lindsay Pope previously raised this argument in a motion to dismiss where it contended that Bolingbrook's complaint failed to meet the amount in controversy requirement for diversity cases. The court denied the motion to dismiss, explaining that there were two possible ways to read the limitation of liability clause. First, the court noted that the clause's plain language suggested that it applied to routine errors or omissions in the construction documents, as opposed to design flaws. Second, the court observed that the best that Bolingbrook could hope for was a

finding that the limitation of liability was ambiguous. In that case, the trier of fact would need to determine the parties' intent. Either way, however, Bolingbrook was entitled to proceed with its breach of contract claim as the amount in controversy requirement was satisfied.[1]

The court thus turns to the interpretation of the limitation of liability clause. In Georgia, "[c]ontract construction involves three steps: (1) Is the language clear and unambiguous? If it is, the court simply enforces the contract according to its terms. If it is ambiguous, (2) the court must apply the rules of contract construction to resolve the ambiguity. If the ambiguity cannot be resolved, (3) the issue of what the ambiguous language means and what the parties intended must be resolved by a jury." *Harris v. Distinctive Builders, Inc.*, 549 S.E.2d 496, 499 (Ga. App. 2001).

When determining if a contract is clear and unambiguous, "[a]ll contemporaneous writings shall be admissible to explain each other." Ga. Code Ann. § 24-6-3. Contemporaneous writings are admissible even if there is no ambiguity in the underlying contract. *Baker v. Jellibeans, Inc.*, 314 S.E.2d 874 (Ga. 1984) (the court should consider contemporaneous writings even if one of the written documents purports to contain "the entire understanding of the parties hereto with respect to the transactions contemplated hereby" and the writings are not cross-referenced).

---

[1] When the court ruled on Lindsay Pope's motion to dismiss, it did not hold that the limitation of liability clause was not directed at design flaws. To the contrary, the court's prior order was based on the arguments before the court at that time and the assumption that the allegations in the complaint were true. In addition, the order denying the motion to dismiss observed that Bolingbrook stated a claim for breach of contract because either: (1) the contract's plain language appeared to support its position; or (2) discovery regarding the parties' intent was necessary. Contrary to Bolingbrook's suggestion, this is not a definitive ruling on the limitation of liability issue and does not operate as law of the case.

Georgia law also provides that, "[t]he intention of the parties may differ among themselves. In such case, the meaning placed on the contract by one party and known to be thus understood by the other party at the time shall be held as the true meaning." Ga. Code Ann. § 13-2-4. In some cases, the only evidence of the parties' intent is the express language of the contract. *Harris v. Distinctive Builders, Inc.*, 549 S.E.2d at 499. Thus, to the extent that other written documents shed light on the parties' intent, the court may consider those documents. *Id.* The court may not, however, consider oral statements which purport to change the meaning of the written documents. *First Data POS, Inc. v. Willis*, 546 S.E.2d 781, 784 (Ga. App. 2001) (the parol evidence rule "prohibits the consideration of evidence of a prior or contemporaneous oral agreement to alter, vary or change the unambiguous terms of a written contract").

The court directed the parties to file supplemental memoranda discussing the admissible written materials (*i.e.*, contemporaneous writings which are admissible under Ga. Code Ann. § 24-6-3) which purportedly shed light on the parties' intentions when they agreed to the limitation of liability clause. According to Bolingbrook, the only such document is the agreement itself, the agreement is not ambiguous, and the limitation of liability clause in the agreement does not cover design flaws. Lindsay Pope also contends that the agreement is not ambiguous, but then goes on to argue that limitation of liability clause covers any and all problems, including design flaws. Alternatively, it asserts that the agreement is ambiguous because it can be reasonably construed in multiple ways and seeks to introduce parol evidence supporting its view of the clause.

With these arguments in mind, the court turns to the language of the limitation of liability clause. The clause begins by stating that, "[i]n any project there will be ambiguities, inconsistencies, errors, and omissions in the Construction Documents." Contract at ¶ 10.2. The

"construction documents" are the "drawings and specifications" prepared by Lindsay Pope. Contract at ¶ 1.3.1. The clause then goes on to state that, "[t]hese conditions may result in changes to the Contract Work, Amount, and Time. To the extent of a Contingency Reserve of 5% of the Construction Cost, the Owner agrees to indemnify and hold the Architect harmless with respect to all claims, awards, or legal actions arising out of any suit concerning the aforementioned changes." Contract at ¶ 10.2.

The clause thus provides that Bolingbrook will indemnify Lindsay Pope to the extent that errors in the construction documents that result in changes to the contract work, amount, or time cause damages over 5% of the construction cost. The court's reading of the clause is based on the fact that the clause on its face only covers errors that lead to changes to the contract work, amount, or time. The alleged problems with the design did not lead to changes to the contract work, amount, or time. Because Bolingbrook is not trying to seek damages based on changes to the contract work, amount, or time, the limitation of liability clause does not apply to its claim of negligent design.

Perhaps recognizing that the contract's plain language does not support its position, Lindsay Pope vigorously argues that consideration of parol evidence is appropriate. In support, Linday Pope first contends that the clause can just as reasonably be read to cover any and all claims for damages arising under the contract. The court disagrees; the clause plainly only covers "ambiguities, inconsistencies, errors, and omissions in the Construction Documents" which "result in changes to the Contract Work, Amount, and Time."

Second, Lindsay Pope asserts that under Georgia law, "[t]he intention of the parties may differ among themselves. In such case, the meaning placed on the contract by one party and

known to be thus understood by the other party at the time shall be held as the true meaning." Ga. Code Ann. § 13-2-4. Based on this provision, Lindsay Pope asks the court to consider parol evidence that purportedly shows that Bolingbrook understood that the limitation of liability clause covered all potential claims, including those based on design flaws.

Lindsay Pope's reading of Georgia law, however, is overly broad. As the court has noted in a prior order, the court may not consider oral statements which purport to change the meaning of written documents. *First Data POS, Inc. v. Willis*, 546 S.E.2d 781, 784 (Ga. App. 2001) (the parol evidence rule "prohibits the consideration of evidence of a prior or contemporaneous oral agreement to alter, vary or change the unambiguous terms of a written contract"). Since the proposed parol evidence seeks to do precisely this, it is inadmissible.

### III. Conclusion

For the above reasons, Bolingbrook is entitled to summary judgment as to Lindsay Pope's affirmative defenses, which seek to use the limitation of liability clause to block Bolingbrook's breach of contract and negligent design claims, and Lindsay Pope's motion for summary judgment is denied.

DATE: April 20, 2005

Blanche M. Manning
United States District Judge